# Case No. 25-11205

## In the United States Court of Appeals for the Fifth Circuit

PROMED, L.L.C.,

***Plaintiff – Appellant/Cross-Appellee***

**v.**

QUINTAIROS PRIETO WOOD & BOYER, P.A.,

***Defendant – Appellee/Cross-Appellant.***

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, NO. 3:23-CV-2023

## BRIEF OF APPELLANT

**Israel R. Silvas**
Texas Bar No. 24051338
Isilvas@dykema.com
**Christopher D. Kratovil**
Texas Bar No. 24027427
ckratovil@dykema.com
**Daniel J. Hall**
Texas Bar No. 24118946
dhall@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401
***ATTORNEYS FOR APPELLANT***

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

A. Parties

| | |
|---|---|
| **Appellant:** | **ProMED, LLC** |
| **Appellee:** | **Quintairos Prieto Wood & Boyer, P.A.** |

B. Counsel

| | |
|---|---|
| **Attorneys for Appellants**: | **Israel R. Silvas**<br>**Christopher D. Kratovil**<br>**Daniel J. Hall**<br>DYKEMA GOSSETT PLLC<br>1717 Main Street, Suite 4200<br>Dallas, Texas 75201 |
| **Attorneys for Appellee:** | **Thad D. Spalding**<br>DURHAM, PITTARD & SPALDING, LLP<br>PO Box 224626<br>Dallas, Texas 75222<br><br>**Shannon Turner Hays**<br>NADLER LAW, PLLC<br>PO Box 38328<br>Dallas, Texas 75238 |

**Brent W. Martinelli**
**Frank Alvarez**
QUINTAIROS, PRIETO, WOOD & BOYER P.A.
1700 Pacific Avenue, Suite 4545
Dallas, Texas 75201

*/s/ Christopher D. Kratovil*
**Christopher D. Kratovil**
Counsel for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument due to the significance of the district court overturning a jury verdict through a renewed motion for judgment as a matter of law. Because this case implicates the constitutional role of the jury, the proper standard for setting aside a jury verdict, and the limits of judicial authority to weigh evidence after a jury verdict, Appellant believes that oral argument will materially assist the Court in consideration of this appeal.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ..................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................... iv

TABLE OF CONTENTS ........................................................................ v

TABLE OF AUTHORITIES ................................................................. vii

JURISDICTIONAL STATEMENT ....................................................... ix

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ............... x

STATEMENT OF THE CASE ................................................................ 1

SUMMARY OF THE ARGUMENT ......................................................... 9

STANDARD OF REVIEW ..................................................................... 13

ARGUMENT ........................................................................................ 15

I. ProMED Introduced Sufficient Evidence to Support the Jury's Finding that QPWB Acted With Willful Default and/or Gross Negligence. ........................................................................ 16

A. The District Court Failed to Consider the Circumstantial Evidence Supporting the Jury's Findings. ............................. 17

B. The District Court Failed to Draw All Reasonable Inferences in Favor of ProMED .............................................. 25

C. The District Court Credited Evidence Favorable to QPWB that the Jury Was Not Required to Believe. ........................... 28

D. The District Court Erred By Re-calculating Pre-Judgment Interest. ................................................................... 29

II. The District Court Erred By Denying ProMED's Motion for Attorney's Fees ........ 30

CONCLUSION ........ 32

CERTIFICATE OF SERVICE ........ 33

CERTIFICATE OF COMPLIANCE ........ 35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ace Am. Ins. Co. v. Rouse's Enters., LLC*,
280 So. 3d 402 (Ala. 2018) .......... 17

*Bell v. Colony Apartments Co.*,
568 So. 2d 805 (Ala. 1990) .......... 18

*Comeq, Inc. v. Mitternight Boiler Works, Inc.*,
456 So. 2d 264 (Ala. 1984) .......... 29

*Cooper v. Morales*,
535 Fed. Appx. 425 (5th Cir. 2013) .......... 13, 14

*Davis v. Credit Bureau of the South*,
908 F.3d 972 (5th Cir. 2018) .......... 14, 15

*Eagerton v. Williams*,
433 So. 2d 436 (Ala. 1983) .......... 31

*Flowers v. S. Reg'l Physician Servs.*,
247 F.3d 229 (5th Cir. 2001) .......... 13, 29

*Green v. Adm'Rs of the Tulane Educ. Fund*,
284 F.3d 642 (5th Cir. 2002) .......... 25, 26

*Hamman v. Southwestern Gas Pipeline, Inc.*,
821 F.2d 299 (5th Cir. 1987) .......... 29

*Lapeyrouse Grain Corp. v. Tallant*,
439 So. 2d 105 (Ala. 1983) .......... 29

*Moss v. Winston*,
223 Ala. 515, 137 So. 303 (Ala. 1931) .......... 31, 32

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) .......... 13

*Reynolds v. First Ala. Bank, N.A.*,
471 So. 2d 1238 (Ala. 1985) .......... 31

*Robinson v. Jackson State Univ.*,
714 Fed. Appx. 354 (5th Cir. 2017) .......... 28

*Schaeffer v. Poellnitz*,
154 So. 3d 979 (Ala. 2014) .......... 17

*Urban Developers LLC v. City of Jackson, Miss.*,
468 F.3d 281 (5th Cir. 2006) .......... 14

*Wiggins v. Mobile Greyhound Park, LLP*,
294 So. 3d 709 (Ala. 2019) .......... 17, 18

**Statutes**

28 U.S.C. § 1291 .......... ix

ALA. CODE § 8-8-8 .......... 29

NADLER LAW .......... ii

**Other Authorities**

5th CIR. R. 32.1 .......... 35

5th Circuit Rule 28.2.1 .......... ii

FED. R. APP. P. 32(a)(5) .......... 35

FED. R. APP. P. 32(a)(6) .......... 35

FED. R. APP. P. 32(a)(7)(B) .......... 35

FED. R. APP. P. 32(f) .......... 35

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal from a grant of a renewed motion for judgment as a matter of law under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

1. Whether the district court erred in granting in part Appellee's Renewed Motion for Judgment as a Matter of Law when a legally sufficient evidentiary basis existed for a reasonable jury to find in Appellant's favor.

2. Whether the district court erred in denying Appellant's request for attorney's fees when Alabama law authorizes an award of attorney's fees when a party practices willful negligence and the jury found that Appellee acted with willful default and/or gross negligence.

## STATEMENT OF THE CASE

This action arises out of Defendant-Appellee Quintairos Prieto Wood and Boyer, P.C.'s ("QPWB" or "Appellee") breach of an escrow agreement wherein it agreed to serve as the escrow agent in a transaction related to the purchase of a substantial quantity of latex gloves. On June 17, 2020, Plaintiff-Appellant ProMED, LLC ("ProMED") entered into an agreement with non-party Luxe Development, LLC ("Luxe") to purchase certain latex gloves in exchange for $850,000.00. ROA.1213-14. Luxe had agreements with other customers for additional latex gloves in exchange for $100,000.00. ROA.1311. Luxe combined these orders and entered into a purchase agreement with non-party ProVantage Healthcare Solutions, Inc. ("ProVantage") for the purchase of 125,000 boxes of nitrile blue examination gloves for a total of $950,000.00 ("Purchase Agreement"). ROA.1087-93; ROA.1246-48. To facilitate this transaction, Luxe and ProVantage entered into an escrow agreement with a law firm offering escrow services, Defendant-Appellee QPWB, on July 16, 2020 (Escrow Agreement"). ROA.1064-67; ROA.1244.

Under the terms of the Purchase Agreement, Luxe was required to deposit $475,000.00 into QPWB's escrow account within 24 hours of signing the contract. ROA.1087-88; ROA.1250. After receiving a bill of lading, Luxe would deposit the remaining $475,000.00 into QPWB's escrow account. ROA.1088; ROA.1250. Luxe deposited the funds in two transactions, on July 28, 2020, and on August 29, 2020, respectively. ROA.1073; ROA.630; ROA.1250. The $950,000.00 deposited by Luxe into QPWB's escrow account is referred to herein as the "Escrowed Funds." Although Luxe did receive a purported bill of lading, it was later discovered that this bill of lading was a forgery. ROA.1097; ROA.1265. Luxe, however, believed that QPWB was safely holding onto all of the Escrowed Funds. ROA.1267.

Under the terms of the Escrow Agreement, QPWB agreed to hold the Escrowed Funds and to act in accordance with the terms of the Escrow Agreement. ROA.1064-67; ROA.1164. The Escrow Agreement permitted QPWB to disburse any portion of the Escrowed Funds only upon QPWB's receipt of consistent written instructions from both Luxe and ProVantage. ROA.1065; ROA.631; ROA.1172-73. Alternatively,

QPWB was permitted to release the Escrowed Funds upon one party's written certification by notifying Luxe and ProVantage of its intention to disburse the Escrowed Funds and permitting the non-requesting party 12 hours to object to the disbursement. ROA.1065; ROA.631; ROA.1173-74. The Escrow Agreement also provided that QPWB would not be liable for any losses, costs, or damages associated with its performance of the Escrow Agreement, unless such losses, costs, or damages arise out of the "willful default" or "gross negligence" of QPWB. ROA.1065.

QPWB disbursed all of the Escrowed Funds in violation of these provisions, making this distribution with gross negligence and in willful default of its obligations under the Escrow Agreement. On July 31, 2020, QPWB disbursed $95,000.00 of the Escrowed Funds to TR Construction Import Export. ROA.630; ROA.1073; ROA.1178. On August 19, 2020, QPWB disbursed $348,750.00 of the Escrowed Funds to TR Construction Import Export. ROA.630; ROA.1073; ROA.1180-81. On August 31, 2020, QPWB disbursed $443,750.00 of the Escrowed Funds to TR Construction Import Export. ROA.630; ROA.1073; ROA.1182. On February 26, 2021, QPWB disbursed $4,750.00 to itself to pay for its services as the escrow

agent. ROA.630; ROA.1073; ROA.1190. On April 7, 2021, QPWB disbursed the remaining $57,750.00 to Advanced Healthcare Solutions LLC. ROA.631; ROA.1073; ROA.1192. QPWB did not receive written instructions from Luxe authorizing any of these disbursements. ROA.631; ROA.1193. QPWB did not provide notice to Luxe prior to making any of the first three disbursements, thus depriving Luxe of its rights under the Escrow Agreement, causing Luxe to lose the value of these disbursements, and preventing Luxe from having any meaningful opportunity to object to the disbursements. ROA.631; ROA.1193-94. QPWB made the final two disbursements over Luxe's direct objection. ROA.1077-78; ROA.1083; ROA.1193-94.

Luxe did not realize that any of the Escrowed Funds had been disbursed until November 10, 2020, when QPWB informed Luxe of its intent to withdraw its payment of $4,750.00. ROA.1082-84; ROA.1184-87. Luxe's attorney responded to this correspondence and requested that QPWB cease any attempts to transfer funds related to the transaction. ROA.1082-84; ROA.1184-87. Luxe's attorney reiterated that Luxe does not agree to the disbursement of any Escrowed Funds again on January

11, 2021. ROA.1082-84; ROA.1184-87. QPWB disregarded this correspondence and made disbursements on February 26, 2021 and April 7, 2021 without receiving written instructions from Luxe and without providing notice to Luxe. ROA.631; ROA.1077-78; ROA.1083; ROA.1193-94.

Non-party Luxe never received the nitrile gloves that were the subject of the Purchase Agreement. ROA.1297. When ProMED did not receive the gloves it paid for in its agreement with Luxe, ProMED filed suit against Luxe and Luxe's owner, Michelle Reulet ("Reulet") in Texas state court. ROA.1216-17. However, ProMED discovered through the discovery process in that lawsuit that QPWB violated the Escrow Agreement with Luxe, which caused the loss of the Escrowed Funds. ROA.1216-18. Therefore, ProMED settled with Luxe and Reulet in exchange for an assignment of any contract claims that Luxe or Reulet had against the escrow agent that improperly (indeed, grossly negligently) distributed the escrowed funds, QPWB. ROA.1068-72; ROA.1219-22.

On August 2, 2023, ProMED filed suit against QPWB in state course Dallas County, Texas. ROA.23-29. On September 8, 2023, QPWB filed a Notice of Removal to the Northern District of Texas, Dallas Division. ROA.11-15.

The jury trial in the district court in this matter began on March 24, 2025, and concluded on March 25, 2025. ROA.7. At the conclusion of trial, the jury returned a verdict in favor of ProMED on its breach of contract claim, awarded ProMED $900,000.00 in damages, and found against QPWB on its affirmative defenses of waiver and estoppel. ROA.640-45. By making these findings, the jury concluded that QPWB acted with willful default and/or gross negligence with respect to all five disbursements from the escrow account. ROA.640-41. The district court originally entered judgment in accordance with the jury's verdict on March 27, 2025. ROA.651. This original final judgment ordered that ProMED recover judgment against QPWB in the principal sum of $900,000.00, together with pre-judgment interest thereon at the rate of 6% per annum beginning on July 31, 2020—the date of the first disbursement. ROA.651. The district court also awarded ProMED

attorney's fees and non-taxable costs that the district court awards on a timely post-judgment motion, taxable costs of court, and post-judgment interest at the rate of 4.088%, compounded annually from the date of the judgment. ROA.651.

After trial, Plaintiff-Appellant ProMED filed a Motion for Attorney's Fees and Costs, arguing that it was entitled to an award of attorney's fees under Alabama law, which provides for an exception to the American Rule where fraud, willful negligence, or malice has been practiced. ROA.652-61. On April 24, 2025, QPWB filed a Renewed Motion for Judgment as a Matter of Law, and, Alternatively, Motion for New Trial. ROA.815-42. QPWB argued, *inter alia*, that ProMED failed to prove that QPWB willfully defaulted or acted with gross negligence when it breached the Escrow Agreement. ROA.815-42. Both motions were fully briefed, and the district court held a hearing on these motions on September 8, 2025. ROA.8-9; ROA.844-67; ROA.916-46; ROA.948-58; ROA.1003-61.

On October 1, 2025, the district court entered a Memorandum Opinion and Order granting in part and denying in party QPWB's

Renewed Motion for Judgment as a Matter of Law. ROA.966-92. The district court found that, with respect to the first three disbursements, the jury could not have reasonably found that QPWB willfully defaulted on the Escrow Agreement or that QPWB's breach of the Escrow Agreement resulted from gross negligence. ROA.975-82. The district court reasoned that Luxe did not specifically object to the first three disbursements and/or provide notice to QPWB that injury would likely or probably result from such disbursement until November 10, 2020. ROA.977-81. By doing so, the district court invaded the province of the jury, weighed the evidence, and failed to credit the facts and inferences demonstrating that QPWB willfully disregarded Luxe's rights from the inception of the Escrow Agreement. The district court effectively placed Luxe in the impossible position of needing to object to disbursements it did not know that QPWB was making. The district court also denied ProMED's Motion for Attorney's Fees. ROA.986-91.

The district court thereafter entered an Amended Judgment, ordering that ProMED recover judgment against QPWB in the principal sum of $62,500.00, together with pre-judgment interest at the rate of 6%

per annum beginning on February 26, 2021, $3,461.23 in costs, taxable costs of court, and post-judgment interest at the rate of 4.088%, compounded annually, beginning March 27, 2025. ROA.993. This appeal follows.

## SUMMARY OF THE ARGUMENT

The district court invaded the province of the jury by overturning the jury's verdict in this matter when it found that the evidence was insufficient to support the jury's finding that QPWB breached the Escrow Agreement, and that the breach resulted from willful default or gross negligence. Specifically, by substituting its own evaluation of the evidence for that of the jury, the district court (1) improperly failed to consider the substantial circumstantial evidence supporting the jury's finding that QPWB acted with willful default and/or gross negligence in making all five improper disbursements from the escrow account; (2) failed to draw all reasonable inferences in favor of ProMED; and (3) credited evidence favorable to the escrow agent, QPWB, that the jury was not required to accept or believe. In substituting its view of the evidence for that of the jury, the district court improperly heightened ProMED's

evidentiary burden by requiring *direct* evidence of QPWB's willful default or gross negligence; the district court disregarded the reasonable inferences that the jury could, and did, draw from the facts and circumstances revealed through the evidence presented during trial.

The district court's grant of the judgment as a matter of law effectively held that Luxe was required to object to disbursements that it did not know were occurring. Such a prescient objection is, of course, an impossibility. The message the district court's substitution of its view of the facts for that of the jury sends is clear: escrow agent QPWB would have avoided all liability if it had kept Luxe in the dark and disbursed all of the Escrowed Funds *before Luxe could object*. Only because Luxe caught on to QPWB's scheme and subsequently vigorously objected to protect its rights did the district court find that QPWB acted with any willful default or gross negligence. Based on the district court's view of the facts, if QPWB had disbursed all of the funds immediately upon receipt, without Luxe's knowledge, QPWB would have completely failed in its duties as an escrow agent while fully avoiding any liability. Stated another way, Luxe could not object to an improper distribution of the

escrowed funds by QPWB when it was entirely unaware that any such distribution was taking place.

While Luxe reasonably believed that its money was held safe in escrow, QPWB was improperly disbursing Luxe's money in knowing violation of the terms of the Escrow Agreement. In the process, QPWB took the position that the money did not even belong to Luxe. QPWB treated Luxe's money as though it already belonged to its client—whom QPWB entered into a fiduciary relationship with while purporting to disclaim any fiduciary responsibilities to both parties in the Escrow Agreement. Despite knowing that the Escrow Agreement only permitted disbursements upon (1) receipt of consistent written instructions from Luxe and ProVantage or (2) one party's notice, if QPWB provides the non-requesting party twelve hours' notice and opportunity to object, QPWB consistently and improperly—and, eventually, over Luxe's direct objection—disbursed all funds at the unilateral direction of its client.

ProMED presented sufficient evidence—including substantial circumstantial evidence—to permit the jury's finding that QPWB breached the Escrow Agreement with willful default or gross negligence.

On this trial record, the district court erred in substituting its view of the evidence for that of the jury. The jury's verdict and the district court's original Judgment based on that verdict should be restored.

The district court separately erred by denying ProMED's application for attorney's fees and costs. Despite the jury finding that QPWB acted with willful default and/or gross negligence, and Alabama law permitting an award of attorney's fees when a defendant acts with, *inter alia*, willful negligence, the district court concluded that QPWB's conduct did not support an award of attorney's fees under Alabama law. In sum, the district court extensively limited QPWB's liability in this matter by finding that QPWB only acted with willful default or gross negligence with respect to the final two transactions, but concomitantly found that the very same conduct giving rise to that finding did not support an award of attorney's fees under an Alabama legal standard that tracks the language of the limitation of liability in the Escrow Agreement. Even under the district court's restrictive view of the evidence of liability, ProMED was entitled to an award of attorneys' fees on the last two transactions where all—both the jury and the district

court—agree that QPWB acted with willful default and/or gross negligence.

## STANDARD OF REVIEW

A district court's grant of a motion for judgment as a matter of law is reviewed de novo on appeal. *Cooper v. Morales*, 535 Fed. Appx. 425, 428 (5th Cir. 2013) (citing *Burch v. Coca-Cola Co.*, 119 F.3d 305, 313 (5th Cir. 1997)). Although the review is de novo, the "standard of review with respect to a jury verdict is especially deferential." *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 235 (5th Cir. 2001) (citing *Brown v. Bryan County, Ok.*, 219 F.3d 450, 456 (5th Cir. 2000)). Courts of Appeals "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Id.* (citing *Brown*, 219 F.3d at 456); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). The Fifth Circuit "disregards all evidence favorable to the

moving party that the jury is not required to believe." *Cooper*, 535 Fed. Appx. at 428 (citing *Reeves*, 530 U.S. at 135).

The granting of a motion for judgment matter of law is improper unless "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes ***reasonable men could not arrive at a contrary verdict***[.]" *Id.* (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969 (en banc))). "Unless there was ***no credible evidence*** presented which might authorize the verdict, the jury's findings must stand." *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 297 (5th Cir. 2006) (emphasis added) (citing *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 461 (5th Cir. 1995)).

The denial of a motion for attorneys' fees is reviewed for abuse of discretion. *Davis v. Credit Bureau of the South*, 908 F.3d 972, 975 (5th Cir. 2018) (citing *Sw. Bell. Tel. Co. v. City of El Paso*, 346 F.3d 541, 550 (5th Cir. 2003)). "In evaluating whether the district court abused its discretion to award attorney's fees, [the Fifth Circuit] reviews the factual findings supporting the grant or denial of attorney's fees for clear error and the conclusions of law underlying the award *de novo*." *Id.* (quoting

*Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008)). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (quoting *CenterPoint Energy Hous. Elec. LLC v. Harris Cnty. Toll Rd. Auth.*, 436 F.3d 541, 550 (5th Cir. 2006)).

## ARGUMENT

The district court erred in granting in part QPWB's Renewed Motion for Judgment as a Matter of Law. Specifically, by finding that ProMED failed to produce evidence showing that QPWB acted with willful default and/or gross negligence with respect to the first three improper escrow disbursements, the district court (1) improperly failed to consider and credit the circumstantial evidence supporting the jury's finding that QPWB acted with willful default and/or gross negligence with respect to all five disbursements; (2) failed to draw all reasonable inferences in favor of ProMED; and (3) credited evidence favorable to QPWB that the jury was not required to believe. By doing so, the district court tacitly required ProMED to present direct evidence that QPWB acted with willful default or gross negligence with respect to the first

three disbursements, which effectively and impermissibly heightened ProMED's evidentiary burden beyond what is required. The district court also placed ProMED in the impossible position of having to demonstrate that Luxe objected to improper disbursements of which *Luxe was unaware*.

The district court also erred in denying ProMED's Motion for Attorney's Fees. Despite Alabama law permitting an award of attorney's fees when a defendant has committed fraud, willful negligence, or malice or otherwise has acted in bad faith, and the jury finding that QPWB acted with willful default and/or gross negligence, the district court denied ProMED's Motion for Attorney's Fees.

## I. ProMED Introduced Sufficient Evidence to Support the Jury's Finding that QPWB Acted With Willful Default and/or Gross Negligence.

At the close of the trial, the jury was properly instructed that "willful default" means "a conscious or intentional failure to act, as opposed to accidental or involuntary noncompliance. No wrongful motive or intent is necessary to show willful conduct." ROA.641; *Ace Am. Ins. Co. v. Rouse's Enters., LLC*, 280 So. 3d 402, 404 (Ala. 2018). The jury was also

correctly instructed that gross negligence means "the intentional failure to perform a manifested duty in reckless disregard of the consequences as affecting the life and property of another." ROA.641; *Schaeffer v. Poellnitz*, 154 So. 3d 979, 986 (Ala. 2014). Even with the requirement to find that QPWB acted with willful default and/or gross negligence, the jury found that ProMED proved its breach of contract claim by a preponderance of the evidence. ROA.641. The jury's finding of willful default and/or gross negligence was thus required and inherent in its finding that QPWB was liable for breaching the Escrow Agreement.

### A. The District Court Failed to Consider the Circumstantial Evidence Supporting the Jury's Findings.

"In both civil and criminal cases, circumstantial evidence is considered just as probative as direct evidence." *Wiggins v. Mobile Greyhound Park, LLP*, 294 So. 3d 709, 724 (Ala. 2019) (quoting *United States v. Hirani*, 824 F.3d 741, 747 (8th Cir. 2016)). "The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" *Id.* at 723

(quoting *Hirani*, 824 F.3d at 747). "A fact is established by circumstantial evidence if it can be reasonably inferred from the facts and circumstances adduced." *Bell v. Colony Apartments Co.*, 568 So. 2d 805, 810-11 (Ala. 1990) (citing first *May v. Moore*, 424 So. 2d 596 (Ala. 1982), and citing second *State v. Ludlam*, 384 So. 2d 1089 (Ala. Civ. App. 1980)). In fact, the district court specifically instructed the jury that "[t]he law makes no distinction between the weight you may give to either direct or circumstantial evidence." ROA.637. However, when the district court re-weighed the evidence in granting judgment as a matter of law to QPWB, it completely ignored the "chain of facts and circumstances that, without going directly to prove the existence of an essential fact, gives rise to a logical inference that such fact does actually exist." ROA.637.

The district court erred when it found that "[w]ith respect to the three T-R Transfers, the jury could not have reasonably found that QPWB willfully defaulted on the Escrow Agreement or that QPWB's breach of the Escrow Agreement resulted from gross negligence." ROA.977. The district court reasoned that ProMED did not present any direct evidence that (1) QPWB Chief Financial Officer Alan Brenner

("Brenner") knew, at any point prior to October 8, 2020, that injury would likely or probably result by failing to obtain written instructions from Luxe or provide Luxe with notice prior to each of the disbursements, or (2) Brenner recklessly disregarded the consequences of his conduct. ROA.977-78.

The district court's reasoning disregards the reasonable inferences that the jury could, and did, draw from the evidence presented at trial. As an initial matter, QPWB knowingly and intentionally treated Luxe and ProVantage differently with respect to the Escrow Agreement. In the Escrow Agreement, QPWB specifically disclaimed any fiduciary responsibility to both Luxe and ProVantage. ROA.1065; ROA.1167-68. However, unbeknownst to Luxe, QPWB specifically represented in its engagement letter with ProVantage that QPWB would act "as fiduciary and escrow agent with respect to the receipt of funds to be disbursed to a third party[.]" ROA.1085; ROA. 1168-70. Thus, from the outset, QPWB disclaimed any fiduciary duty to both Luxe and ProVantage, keeping Luxe in the dark that QPWB had separately and secretly entered into a fiduciary relationship with ProVantage. This evidence alone, coupled

with QPWB's undisputed failure to follow the express terms of the Escrow Agreement, is sufficient evidence for a reasonable juror to infer that QPWB's conduct with respect to its breach of the Escrow Agreement was willful.

Further, at trial, Brenner acknowledged that QPWB was not authorized to release the escrowed funds without prior approval from Luxe, or at a minimum until giving Luxe an opportunity to object.[1] ROA.1173. Despite this, QPWB disbursed the Escrowed Funds over Luxe's attorney's direct request for contact, over Luxe's notice to ProVantage that it did not have authority to act on behalf of Luxe, and at least two direct objections from Luxe's attorney. ROA.1075-80; ROA.1082-84.

In fact, on July 22, 2020, Luxe's attorney reached out to Brenner and requested that Brenner contact him to discuss the Escrow Agreement. ROA.1075-76. While the district court found that this email

---

[1] Because QPWB understood these requirements and proceeded with the disbursements without receiving consistent written authorization or giving Luxe an opportunity to object, QPWB's noncompliance with the Escrow Agreement was conscious or intentional, which allows a reasonable juror to infer willful default.

concerned a deposit of funds into the escrow account, and not a disbursement of the Escrowed Funds, the fact remains that QPWB (1) knew Luxe was represented by an attorney and (2) failed to include Luxe, or Luxe's attorney, on any subsequent correspondence related to the disbursements. ROA.979. Once again, this circumstantial evidence permits a reasonable juror to infer as this jury did; QPWB's breach was willful or grossly negligent.

But there is even more circumstantial evidence that was credited by the jury but disregarded by the district court. On October 7, 2020, Luxe's attorney informed ProVantage via email that "ProVantage and its representatives do not have the authority to act on behalf of Luxe Development, LLC and Michelle Reulet." ROA.1077. Charlene Russo, the representative of ProVantage that executed the Escrow Agreement ("Russo") forwarded this email to QPWB's Brenner the very next day. ROA.1077. In other words, QPWB knew that ProVantage could not unilaterally authorize any transaction or distribution on behalf of Luxe.

On November 10, 2020, Luxe's attorney contacted QPWB's Brenner and noted Brenner's unresponsiveness on this matter. ROA.1082-84.

This email also alerted Brenner that "the terms of the escrow agreement have not been followed" and that ProVantage was "in breach of their agreement" with Luxe. ROA.1083. Luxe's attorney also requested that QPWB immediately cease any attempts to transfer any funds related to the transaction. ROA.1083. But QPWB disregarded this warning, again permitting a reasonable juror to make the inferences as to willfulness and gross negligence that this jury made.

On January 11, 2021, Luxe's attorney noted QPWB's failure to provide any evidence that Luxe ever agreed to or authorized the disbursement of any of the Escrowed Funds. ROA.1079-80. Luxe's attorney specifically stated that "[m]y client does not agree to release any funds to your firm or any other party at this time." ROA.1079.

On March 5, 2021, QPWB represented to Luxe's attorney that it "will not allow the remaining escrowed funds to be held hostage by meritless allegations and will seek attorney's fees and costs should legal action be necessary." ROA.1081. QPWB considered the Escrowed Funds to be "held hostage" by Luxe, notwithstanding the fact that these Escrowed Funds rightfully belonged to Luxe until such disbursements

were properly authorized under the terms of the Escrow Agreement. In fact, Brenner testified at trial that "the money that's represented in the last two transactions isn't Plaintiff's money." ROA.1198. Again, this circumstantial evidence supports the inferences made by this jury.

On April 6, 2021, over Luxe's direct and repeated objections, Mr. Eric Boyer, managing partner of QPWB, instructed Brenner to "just wire the money left in escrow to Charlene . . . I am done with this." ROA.1096. At trial, QPWB's Brenner attempted to justify this conduct by stating that Mr. Boyer is not one to "let things linger" and that "he makes decisions pretty quickly." ROA.1199.

Thus, the considerable circumstantial evidence presented at trial reveals that QPWB (1) consistently, and from the outset, treated the parties to the Escrow Agreement materially differently, (2) represented to Luxe that it would not serve as a fiduciary to either party but separately and secretly entered into a fiduciary relationship with ProVantage, (3) understood the requirement under the Escrow Agreement to receive consistent written instructions from both parties, or provide both parties with an opportunity to object, before disbursing

the funds but then knowingly disbursed the funds in violation of this critical contractual provision, (4) knew Luxe was represented by counsel but failed to inform Luxe's counsel of any of the first three disbursements, from the escrow account, and (5) made the final two disbursements over Luxe's direct objection. This is a sufficient body of evidence—both circumstantial and direct—to support and permit the jury's finding that QPWB acted with willful default and/or gross negligence with respect to all five improper disbursements.

Even if this conduct is not all ***direct*** evidence that QPWB knew that injury was probable or likely to result from QPWB's conduct, the facts and circumstances presented at trial were sufficient to allow the jury to make the reasonable inference that QPWB acted with willful default and/or gross negligence with respect to all five improper disbursements. The district court erred in concluding otherwise.

Moreover, by finding that this evidence was insufficient to support the jury's finding with respect to the first three disbursements, the district court seemingly required ProMED to produce direct "smoking gun" evidence showing QPWB's willful default and/or gross negligence,

which imposes a greater evidentiary burden on ProMED than the law requires. Further, by finding that QPWB only acted with willful default or gross negligence once Luxe became aware of the disbursements and began objecting to any further disbursements, the Court effectively placed ProMED in the impossible position of needing to produce evidence that Luxe objected to disbursements that it did not know were being made. The Court effectively signaled to QPWB that, if it had disbursed all funds secretly and without Luxe's knowledge, then it would not have ever been found to be grossly negligent or willful in its default under the Escrow Agreement—regardless of QPWB's knowing disregard of the terms of the Escrow Agreement.

### B. The District Court Failed to Draw All Reasonable Inferences in Favor of ProMED.

"[I]t is the function of the jury to weigh evidence." *Green v. Adm'Rs of the Tulane Educ. Fund*, 284 F.3d 642, 653 (5th Cir. 2002) (citing *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 164 (5th Cir. 1990)). "[E]vidence in the record can support a jury finding if it is 'of such quality and weight that reasonable and fair-minded [individuals] in the exercise of impartial judgment might reach different conclusions.'" *Id.*

(quoting *Transoil (Jersey) Ltd. v. Belcher Oil Co.*, 950 F.2d 1115, 1118 (5th Cir. 1992)) (brackets in original).

The district court gave complete credence to Brenner's testimony that "he believed that he was acting in compliance with the terms of the Escrow Agreement because he believed that, under ¶ 5 [of the Escrow Agreement], he was entitled to rely on Russo's instructions." ROA.1077-78. Paragraph Five of the Escrow Agreement merely provides that QPWB "will be entitled to rely upon the instructions and other matters covered thereby, and will not be required to investigate the authority of the person executing and delivering such instructions, or otherwise verify the accuracy of the statements or information presented therein." ROA.1065. ProMED controverted Brenner's interpretation of this provision at trial by pointing out that "the only other place in the Escrow Agreement where it talks about instructions" is Paragraph 4, which discusses instructions coming from both parties. ROA.1206. Because the body of evidence presented to the jury permitted multiple inferences related to interpretation of this provision of the Escrow Agreement, the district court was required to defer to the jury's verdict and resolve this

inference in favor of ProMED.

Further, Brenner's interpretation is not supported by the terms of the Escrow Agreement itself or the joint stipulations of the parties. The evidence at trial showed that (1) "[t]he Escrow Agreement required QPWB to hold the Escrow Funds deposited by Luxe until QPWB received consistent written instructions from both ProVantage and Luxe to release the funds;" (2) "[t]he Escrow Agreement permitted QPWB to release the Escrow Funds upon request by just one of the parties only if QPWB notified both Luxe and ProVantage that it intended to make such a disbursement and permitted the parties twelve (12) hours to object to the disbursement;" and (3) "[t]he Escrow Agreement says that nothing in the agreement can be read to lessen the rights of any party to the agreement." ROA.631; ROA.1065.

Thus, Luxe was entitled to rely on the terms of the Escrow Agreement related to the procedure for disbursement. Brenner's interpretation of Paragraph 5 of the Escrow Agreement lessened the rights of Luxe by eviscerating the required procedure to disburse the Escrowed Funds. By resolving the issue of competing interpretations in

favor of QPWB, the district court not only read the Escrow Agreement to lessen the rights of Luxe, but also failed to draw all reasonable inferences in favor of the jury's verdict for ProMED.

### C. The District Court Credited Evidence Favorable to QPWB that the Jury Was Not Required to Believe.

When reviewing the grant of judgment as a matter of law, courts only credit evidence supporting the moving party that is uncontradicted and unimpeached, and only to the extent that evidence comes from disinterested witnesses. *Robinson v. Jackson State Univ.*, 714 Fed. Appx. 354, 359 (5th Cir. 2017) (citing *Reeves*, 530 U.S. 133, 150 (2000)).

The district court, however, credited QPWB's Brenner's testimony that he believed that (1) he was acting in compliance with the terms of Paragraph 5 of the Escrow Agreement by relying on instructions from Russo, and (2) Russo and Reulet had discussed each of the first three disbursements. ROA.977-78. As discussed above in Section I.B., this testimony was contradicted by the terms of the Escrow Agreement itself and the joint stipulation of the parties. ROA.631; ROA.1065. Further, Brenner, as Chief Financial Officer of QPWB, is not a disinterested witness. Finally, Further, the jury was not required to believe Brenner's

testimony on this point. *See Flowers*, 247 F.3d at 236 ("[A] reviewing court must appreciate that 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge'") (quoting *Reeves*, 530 U.S. at 150). Accordingly, the district court erred by crediting this evidence.

### D. The District Court Erred By Re-calculating Pre-Judgment Interest.

Alabama law allows for the recovery of prejudgment interest on damages for breach of contract. *Lapeyrouse Grain Corp. v. Tallant*, 439 So. 2d 105, 111 (Ala. 1983); *see also* ALA. CODE § 8-8-8. "The recovery of interest prior to the date of judgment as an element of damages is a substantive question controlled by the state law governing the claim giving rise to damages." *Hamman v. Southwestern Gas Pipeline, Inc.*, 821 F.2d 299, 307 (5th Cir. 1987) (citing *Wood v. Armco, Inc.*, 814 F.2d 211, 213 n.2 (5th Cir. 1987)). Prejudgment interest accrues from the time of the breach until judgment is entered. *Comeq, Inc. v. Mitternight Boiler Works, Inc.*, 456 So. 2d 264, 269 (Ala. 1984).

Here, the jury determined that ProMed suffered $900,000.00 in damages. ROA.642. QPWB first breached the Escrow Agreement on July

31, 2020. ROA.630; ROA.1073; ROA.1178-79. Therefore, pre-judgment interest should accrue at 6% per annum, as of July 31, 2020 until judgment is entered. In the original judgment entered on March 27, 2025, the district court awarded ProMED pre-judgment interest in accordance with this analysis. ROA.651.

However, because the district court erroneously concluded that QPWB only acted with willful default or gross negligence with respect to the final two transfers, the district court re-calculated pre-judgment interest beginning on February 26, 2021—the date of the fourth disbursement. ROA.993. Because the district court erred in finding that the jury had insufficient evidence to find that QPWB acted with willful default or gross negligence with respect to the first three disbursements, the district court similarly erred in its calculation of pre-judgment interest.

## II. The District Court Erred By Denying ProMED's Motion for Attorney's Fees.

By denying ProMED's Motion for Attorney's Fees, the district court disregarded the applicability of an exception to the American Rule that speaks directly to the findings by the jury in this case.

This case is governed by Alabama generally follows the American Rule, with some exceptions. *Reynolds v. First Ala. Bank, N.A.*, 471 So. 2d 1238, 1241 (Ala. 1985). In Alabama, attorneys' fees are recoverable only where authorized by statute, when provided in a contract, or by special equity. *Eagerton v. Williams*, 433 So. 2d 436, 450 (Ala. 1983) (citing *Shelby Cty. Com. v. Smith*, 372 So. 2d 1092, 1096-97 (Ala. 1979); *In re Moody*, 351 So. 2d 538, 545 (Ala. 1977)). "Alabama recognizes exceptions to the American Rule where fraud, willful negligence or malice has been practiced." *Reynolds*, 471 So. 2d at 1243; *see also Moss v. Winston*, 223 Ala. 515, 517, 137 So. 303, 305 (Ala. 1931) (award of attorneys' fees is available in cases of civil injury and breach of contract when the defendant acts with fraud, willful negligence, or malice).

Here, the jury found that QPWB acted with willful default and/or gross negligence when it breached the Escrow Agreement. ROA.640-41. As argued by ProMED at the hearing on ProMED's Motion for Attorney's Fees, and the motion itself, the limitation of liability in the Escrow Agreement "tracks the judge-made exception to the American Rule that has existed since the *Moss* case from the Alabama Supreme Court in

1931." ROA.1033-34; ROA.655. "In other words, the limitation of liability clause in . . . the Escrow Agreement echoes the standard for the exception to the American Rule in Alabama[.]" ROA.1034.

The district court disregarded the similarities between the jury's findings and the standard for this exception by finding that "gross negligence or willful default on a contract" is not as "egregious" as the conduct that warranted application of this exception in other Alabama cases. ROA.988. By doing so, the district court ignored the precise language of the exception permitting an award of attorney's fees when a defendant acts with "willful negligence." Accordingly, the district court abused its discretion by refusing to award ProMED its attorney's fees.

## CONCLUSION

Appellant ProMED, LLC respectfully requests that this Court reverse the order of the district court granting, in part, Appellee Quintairos Prieto Wood & Boyer, P.C.'s Renewed Motion for Judgment as a Matter of Law, reinstate the district court's original award of pre-judgment interest, reinstate the jury's verdict and the district court's original Judgment based upon it, and remand this matter back to the

district court for a determination of the amount of attorney's fees to be awarded. ProMED also requests any further relief to which it may justly be entitled.

Date: March 27, 2026

Respectfully submitted,

By: */s/ Christopher D. Kratovil*
**Israel R. Silvas**
State Bar No. 24051338
isilvas@dykema.com
**Christopher D. Kratovil**
State Bar No. 24027427
ckratovil@dykema.com
**Daniel J. Hall**
Texas Bar No. 24118946
dhall@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6400
(214) 462-6401 (Fax)

**ATTORNEYS FOR PLAINTIFF-APPELLANT/CROSS-APPELLEE PROMED, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March, 2026, a copy of the foregoing Brief of Appellant was electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all

parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Christopher D. Kratovil*
**Christopher D. Kratovil**
Counsel for Plaintiff-Appellant/
Cross-Appellee

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this brief contains 6,020 words.

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

DATED: March 27, 2026

*/s/ Christopher D. Kratovil*
**Christopher D. Kratovil**
Counsel for Plaintiff-Appellant/
Cross-Appellee